May it please the Court, Stuart Richter, Greg Korman from Katamusha and Rosamond on behalf of the Defendants and Appellants, HSBC Bank, HSBC Finance, Best Buy Stores, and Best Buy Company. The issue before the Court today relates to diversity jurisdiction under the Class Action Fairness Act of 2005. Do we have a deadline for filing of February 27 under the Class Action Fairness Act? I'm sorry, Your Honor. I don't understand what deadline you're speaking or referring to. Oh, well, no point in answering that. There's something in the statute for creating a 60-day deadline. Oh, yes. I'm sorry. Yes, there is, Your Honor. I apologize. I thought you were referring that we had missed a deadline on the appeal or an undue deadline. No, I'm not worried about your deadline. I'm worried about ours. That is correct, Your Honor. That is true. There's a statutory deadline. Yes, Your Honor. February 27th? I could check the exact date, Your Honor, but I believe it is 60 days. Could you speak to industrial tectonics? Yes, Your Honor. The district court in this case referred to tectonics, and I think tectonics lays out the appropriate standard. And as this panel no doubt is aware, this Court has addressed this issue before in a somewhat related case called Friend v. Hertz. The standard in tectonics is, and this is the related case, Costco, to analyze whether a corporation's activities substantially predominate, you look at two tests. One is the principal place of business test, and if the principal place of business test doesn't show that a corporation's activities are significantly larger in one state, then you refer to what's called the nerve center test. The nerve center test looks towards where the corporation's management and other activities take place. Help me sum, I don't know if we can get this far in the analysis or not, but help me sum on nerve center. On the Circuit City stores, if I recall correctly, there's a holding company in Minnesota with 18 employees, and then there's a subordinate corporation, and then there are the stores all over the country. Is that right so far? Except that this is Best Buy, not Circuit City, our competitor, which is in bankruptcy. Sorry. Well, it's a good point, Your Honor, because that's part of the argument that I'll make eventually, is that this applies, this case has ramifications for all national retailers, except, of course, if they're in bankruptcy. I understand that, but right now what I'm asking about is questions to try to figure out what the nerve center is. What do they do in Minnesota, and what is? Who's they? The holding company or the other? Yes. Best Buy Company is the management company, Your Honor, and Best Buy Stores Limited Partnership is the company that runs all the operations of the various stores around the country. And we submitted evidence in the district court, and it wasn't disputed that all of the management operations are in Minnesota. For both of them? Yes. That means all the officers, the directors, management-level employees, basically what you have around the country, Your Honor, is stores. And then distribution centers also. There's two distribution centers in California, one's owned, one's leased. There's distribution centers in Ohio and several other states. So when I look at all the percents, and especially comparing it to Costco, it does appear that it's evenly, fairly evenly spread out, so the stores in California is, I guess, 11, the retail store is 11 percent in California and 9.6 in the second largest, Texas, in your papers. That's correct, Your Honor. So I guess I still don't see the textual basis for analyzing 1332C as incorporating a per capita test, but why doesn't just the straight Costco analysis say that that's evenly spread out, we can't find a substantial predominance? How does it compare to the percentages that they, that we looked at in Costco? Well, Costco, Your Honor, is a much different case. Remember, Costco was a case where we looked at the refineries that the defendant, in that case the defendant operated, and there were five of eight refineries. That was the product that Costco was creating. And the other three were in three different states. Correct. So there was a 500 percent difference, right? Well, I would not advocate looking at it that way, Your Honor, but you're right. 60 percent of the refining capacity was in California. Three refineries were in three different states. The majority, over 60 percent of the employees were in California. So when you looked at Costco, it wasn't the situation here where you have stores in 48 states plus the District of Columbia and Puerto Rico. They were really operating in a lesser number of states, and a substantial or significantly larger portion of the operations were in California. So do we have any case which is spread out the way these operations are, the way the retail stores, employees, and net sales, and I guess also distribution centers by square footage is what you gave us, that would suggest that California, because it's a few percentage points higher in some cases, should be a substantial predominance, should be deemed the principal place of business? What's the closest case to that? The closest case to that, Your Honor, was the case that, in this circuit, that you were involved with, which is the Hertz case. We would submit that that's not precedent under 36-3, the circuit rule. There are a number of cases in other circuits that have addressed that issue. One of them was cited in Costco and ITC, which was Egan v. American Airlines. In that case, they did say that American Airlines had operations spread out throughout the country, and you really needed to look at the nerve center of American Airlines, not the various states it operated in. A similar case in, I think it was the Tenth Circuit, which Costco cited, and distinguished for that very reason that the operations were spread out, was the United Nuclear case, saying that that corporation, although it did have operations in New Mexico, had operations in many other states. It was divided into five, I think, different divisions of operations, you know, mining, radioactive processing, whatever they did, and it was spread out among six or seven different states. So in that case, they also looked for nerve center, and the Costco court said, you can't look at that case because it's not like the Costco situation where you have 60 percent of your operations in California. You do agree that in looking at the two tests, the substantial predominance test and the nerve center test, you look first at the substantial predominance test, right? I would agree, Your Honor. Now, in Costco, you said 60 percent of the refinery was in California, and that was their product. That was the substantial predominance of their business. Best Buy's business or product is space. It's just places to have people come and buy at retail. That's their product. Don't we have here enough facts to say that the substantial predominance of the space of distribution centers and the retail centers is in California? I would respectfully disagree, Your Honor. Costco was manufacturing a product and selling a product. Best Buy is a retailer, and in particular, a consumer electronics retailer. It's buying products from the Philips and the Sonys of the world, and it's providing a retail location to sell to consumers, whereas Costco, the Court looked at not only the manufacturing, but where it was selling. And 37 percent of the retail locations in Costco were in California, only 14 percent in Arizona, more than double the next highest state. And Costco wasn't spread out like Best Buy. Costco only operated in four or five states in the West Coast. So Costco is a very different case, and Costco didn't specifically address, as I pointed out earlier, the issue of the national retailer or the corporation selling products nationally, where there's only minor differences in the percentage operations. And, in fact, it distinguished those cases when it distinguished Egan and United Nuclear. So it's a very different situation, Your Honor. If I may, I'd like to address the issue of what we call the California bias. We submitted statistics on both the population of California, and we also submitted in the reply statistics about gross domestic product in California as compared to other states, and, in particular, the consumer electronics market in California as compared to other states. I suppose it could be the onion market, couldn't it? It would be the principal place of business of every national business that retails goods. Just about, Your Honor. It's particularly acute. Or services. I guess it's principal place of business for H&R Block, too. That's our point, Your Honor, is that you're basically closing the doors to every national retailer that wants to operate in California and operates based on the demand, which is a function of the population. So the, for example ---- But that's true. I guess I don't see a problem with that. I mean, 1332C just says principal place of business, and that's been interpreted as a substantial predominance. I don't see any textual basis for reading that section as incorporating a per capita test. I would agree, Your Honor. It is a unique situation. Nothing in the statute or TSCA or ITC says that you need to take that into account. I think common sense and good logic dictate that you should do that in this situation because there's a couple policy reasons at issue here. One, as I just mentioned, you're shutting the doors in class actions to national retailers in California. If I'm a clever plaintiff's lawyer and I want to avoid the local controversy exception and I want to bring a lawsuit in California because I love the fact that under the pioneer line of decisions in California, I get discovery of my class before it's even certified. But maybe Congress just likes California, too. I mean, I think the argument that it would put everything in California has some bearing. Is Congress likely to have meant that? No. They could have. And I guess I need to know, what else do we have on substantial predominance? The only issues on substantial predominance, Your Honor, are the two tests that I've indicated, and I have indicated that other circuits in looking at these types of cases where there's national retailers or corporations that sell nationally have applied a nerve center test in that situation. Did you just skip the predominance altogether?  No, Your Honor. That's not what I'm saying, is they look at the substantial predominance test and see if there is a substantial presence in a particular state. But if the operations are spread out nationally, like a truly national retailer. Here's what I'm getting at. I'm thinking you distinguish Tosco because for their main business it was 60 percent California. So it looks to me as though you don't just ignore the place of operations test, substantial predominance. What you're saying is it has to be a lot more substantial. In effect, yes, Your Honor. You have to look at the place of operations test to see if the presence in one state is significantly larger than individual other states. But if you run into the situation like you have here, Your Honor, we would submit where California stores 11.1 percent versus Texas at 9.6, when compared to population where California is 12 percent of the population and Texas is 8 percent of the population, and California grossly disproportionate in terms of consumer electronics sales, you take that into account and you have to say, Your Honor, that does the operations in California, are they significantly larger? Well, you know, you refer to the policy of the Clause Action Fairness Act, but my understanding is that Congress chose not to revise the 1332C, that basis of diversity jurisdiction in CAFA. So the CAFA policies don't really affect our interpretation of this section. Is that correct? You're absolutely right, Your Honor. The Congress did leave in place the definition of substantial predominance or principal place of business. Is the test majority? No. The word majority is used in Tosco, but then Tosco and ITC go on to not really necessarily look at majority, but the word majority of the operations is used. There is no guidance in this circuit, Your Honor, I would submit, on whether you apply what is significantly larger in one particular jurisdiction and what those numbers mean when you deal with a national retailer. The only other example of that is the Friend v. Hertz case and this case. Now, that case is a petition for en banc review pending, so I don't know what's going to happen there, but I believe, Your Honor, that under the Class Action Fairness Act, you say that they didn't, Your Honor, you're correct, didn't change the standard. However, the Class Action Fairness Act was very clear, saying that we want class actions in federal court, particularly interstate class actions. And one of the specific examples they used of a case that didn't apply in the local controversy exception is similar to this case. They said if you have a company that sells cars throughout the country and that company gets sued in Florida in a class action, the plaintiffs allege that it's only Florida citizens, that case is an interstate class action and the local controversy exception shouldn't apply because you can't job the system by pleading a class action based on Florida residents. You look at where the damage was caused. And in this case, the allegation is that there were nondisclosures or misrepresentations in connection with an Internet ad for the sale of a credit card. This case is, it's the paradigm, it's the specific case that's discussed there as an interstate class action. So while CAFA didn't change what is the principal place of business, Your Honor, it did say that these are the kinds of cases that belong in federal court. The reason we're not here is because the federal questions weren't fled in the complaint that are at issue here under TILA and the Banking Act, and because it's going to create maybe a wave of harassment when we go into the office, that's happening  So what we're doing it is trying to exclude these kinds of atrocities in the plaintiff's office so we can't go back into that and try to be bureaucrats and add some more controls to it. I'm sorry, Your Honor. If I take your interpretation of Tosco and apply it to a hypothetical case, I get a funny result. Suppose there's a fine bourbon distributor in Kentucky. They make a great bourbon in small batches. Great bourbon. And they sell very little of it because they make very little. In fact, they sell one case in every state in the union except that there are two guys in Alaska who each buy a case. So they sell two cases in Alaska. It seems to me that under your interpretation of Tosco, their predominant place, their principal place of business is Alaska. So you can sue them in Kentucky or Alaska. Absolutely not. Tosco is very different than that. In this case, it's very different from that. Why is it your interpretation of Tosco, why doesn't it compel the result that it goes to district court in Alaska? Because in your example, the only difference between Alaska and every other state in the union was that two guys bought a case in Alaska. They sell twice as much bourbon in Alaska as they do in any other state in the union. They have no retail space in Alaska, not a single store. They have no employees in Alaska. They don't own any land in Alaska. But they don't anywhere else either. But not So it doesn't distinguish. The only thing that they do in any of the states is sell bourbon, and they sell twice as much in Alaska as anyplace else. Correct. They did not So it's not as though they have a lot of employees in California. They did not purposely avail themselves of doing business in any particular state. They had a mail order business or a phone business, and it happened to go two cases to Alaska. Tosco says you look at a lot of factors. Do they have land in a particular state? Do they lease space in a particular state? Do they employ people? But that won't, in my hypo, it won't generate any predominance. Correct. Because the answer is no on everything except sales. Correct. And on sales, Alaska is twice as big a market as any other state. Correct. And so in your example, because there's twice as many sales, but a small number, I mean a small number, you're talking about $100 in every state and $200 in Alaska. I don't think A case of bourbon would last me years and years. Okay. Maybe it's $500. The point being, Your Honor, that your hypothetical, a court could reasonably say because of that one additional case and nothing else, business in Alaska does not substantially predominate. But what Tosco says to look at, all of the other factors How would you say that it doesn't predominate? Because I would say they have no retail space in any state. They have no employees in any state. I guess I didn't make myself clear. I could easily say Alaska doesn't predominate if they have stores elsewhere and they don't have a store in Alaska. And if they have I could say the mere higher sales in Alaska don't show predominance. But where no other state predominates on any other measure because the measure is zero in every state in the union, then it seems to me all I've got is The place of incorporation in the nerve center. I agree. If there's no predominance, if there's no substantial predominance, then this circuit clearly says you drop down to the nerve center test. And your distillery would be sued in Kentucky where they distill if that's their principal place of business. But that begs the question, because there is predominance as to one factor, sales. What you're saying is there cannot be predominance unless there are other factors such as employees, stores, leases, et cetera. I don't want to suggest Where do you get that? I don't want to suggest that there's a litmus test, that you look only to sales. I want to suggest that what Tosco says is you look at all the factors and you make a determination. If they exist, under Judge Kleinfeld's hypothetical, there's only one factor that exists, which is sales. Then perhaps there's no substantial predominance. I would say that under Judge Kleinfeld's analysis, if there's only sales and there's nothing else, then maybe it's not substantial predominance. But I don't think the Court needs to go there because here Why aren't sales the whole deal? I mean, the only point of renting streets and building stores and hiring people is to sell stuff. I understand that. But if you look at all of the factors that Tosco looked at, Tosco looked at sales. They looked at number of employees. In fact, in Tosco, there were more employees in Arizona than there were in California. And they still said, well, that doesn't really matter because all the other factors show California substantially predominance. Here, the most employees in any state by Best Buy is in California. The most retail stores are in California. The most distribution states are in California. And the most sales. And I would say substantial predominance can mean they not only have more in every category by a certain number, and I don't know what that number is. Tosco doesn't tell us. But it could also mean that California is number one in every category. Substantial predominance means, hey, we've got five different categories here or four or whatever the number is that we're looking at. And in every single category, California is number one. Now, they didn't have to make it California number one. They came to California. This isn't your distillery business. I thought Tosco was a refinery business. Correct. The main thing is refining. 60% of the refining capacities in California and 60% of the employees. Tosco looked at number of employees. They looked at refineries. They looked at retail. No, no, no. You're correct, Your Honor. But it wasn't the only factor. What I'm trying to point out is that they looked at employees, retail locations, convenience stores, sales and inventory, executive and administrative offices. They didn't just look at the number of refineries. And I would suggest that by listing those categories, Tosco tells us that we need to look at more than just one category if they're available. But Tosco also says that Tosco in that case was a major employer and business operator in California, and therefore was not the type of litigant that diversity jurisdiction was designed to protect, looking at the potential for prejudice. Correct. But I guess doesn't that argument go too far? For example, in a case like this, presumably Texas, the second largest, could also be the principal place of business, and someone could make that argument based on the policy. Well, I don't think it could be the principal place of business. I think you could make the argument that Best Buy probably wouldn't be subject to local prejudices in Texas or in Florida or in any of the states where their retail stores dot the landscape. But you can only have, I would submit in the Ninth Circuit, one principal place of business applying either substantial predominance or the nerve center test. So for California's analysis, it couldn't also be a citizen of Texas, but certainly the diversity statute rationale would apply to any national retailer in this modern world. I mean, we shouldn't kid ourselves. Diversity was established to protect foreign businesses from local prejudices. We don't have that with national retailers. We don't have that with Best Buy. Well, sure you do. Local prejudices doesn't just mean we don't like any of those Yankees selling things here in Georgia. It means, oh, look, a deep pocket, a national corporation. We can award a lot of money without it costing any Alaskans anything. I think a deep pocket analysis, Your Honor, and I understand the Court's argument, I think that's a little bit different from a local prejudice because it's not just some foreign deep pocket. Sixteen thousand California citizens work for Best Buy. So there's a good chance that when I start picking a jury, I may have to disqualify some people because they're employed by Best Buy. Well, they may be suing Best Buy for discrimination or something. But the point is Best Buy is really a local concern. And there are... Incidentally, is there any dispute that if we were to reach the nerve center test, and I understand that under your argument we would never reach it, but if we did, that Minnesota is the nerve center? Well, I would go so far and say I don't know about Minnesota, but I would concede it's not California. I couldn't quite follow all of the holding companies and... What they say is all the management activities are in Minnesota. I don't have any evidence to dispute that. Okay. But I will concede it's not California. The other point I want to make, Your Honor, is this Court decided the Friend case three months ago. And Friend is more like this case. And I realize it's not precedent under the Ninth Circuit rules, but I'm allowed to cite it and discuss it. And Friend involved... The other public case? Yes. Friend involved Hertz. Hertz is, for all purposes for this issue, identical to Best Buy. They're in every State in the country. And the Court had plenty of opportunity and did analyze both Tosco and Industrial Tectonics. And it came to the correct decision that Hertz had substantial predominance. And with its extensive California contacts, Hertz is not in jeopardy of being mistreated in California courts. That's what we have here with Best Buy. Now... When I look at these numbers and the spread between California and Texas and the other States, it's very close. Yes. What's your best case for saying when you have differences that are that close that we don't apply the nerve center test? It's hard to see that California is... That's a great question. And it goes back, and it goes back, Your Honor, to how the district court in this case correctly read Tosco. Tosco tells us you don't look at the States in comparison to the nation as a whole. You don't say, well, California has 12 percent of the nation and Texas only has 8 percent. Therefore, there's only a 4 percent difference. You look and compare California to the next State. So, for instance, for purposes of sales, looking at California sales in this case, 4.2 billion versus 2.8 billion for the next leading State. Now, as a percentage, that's only 13 percent of the nation versus 9. And you might say, well, that's only 4 percent. But Tosco says, no, you compare the 4.2 billion in California to the 2.8 billion in the next biggest State. That's 50 percent more. But if I compare five refineries in California to one in the next largest State, that's an enormously bigger percentage. Correct. I mean, they're not even comparable. Correct. But here we have 50 percent more sales in California than in the next biggest State. But what's the closest to this spread? I mean, Tosco is clearly hugely different. In number of refineries. But Tosco in employees, there were more employees in Arizona than California. But they still didn't use that as an impediment because the other factors showed substantial predominance. And what I'm suggesting here is in every category, California is 40 to 50 percent greater than the next State. Now, it's not 40. You said there were two out of four lubricant facilities were in California. So I don't know what the next largest State was. Right. This is Tosco. Retail locations, 35 percent were in California, 14 percent were in Arizona. I mean, I just don't see the ‑‑ it seems quite different than the spread that was in the other State. Well, then how does one answer the fact when they look at number of employees and they say, well, Arizona had more employees? I mean, that obviously wasn't an impediment, so they looked at other factors. And I hate to come up with this definition. We've all heard it a million times when Justice Stewart said, I can't define pornography, but I know it when I see it. I'm not sure I can define substantial predominance in terms of what is the number that we look at. And I would suggest that we stay away from trying to set a bright‑blind litmus test on setting forth how much bigger or how many percentage points bigger. And I would suggest instead Tosco provides us with the guidance and the district court below properly used that guidance and came up with its analysis that when you compare State to State, 50 percent more in sales, 30 percent more employees, 30 percent more in distribution space is all substantial. It's significant. It's not like California had four more employees or made $100 more than the next biggest State. It made $1.4 billion more than the next biggest State. That's 50 percent more revenue. They only had five States in the country that even got to $1.4 billion. So it's a significant difference. As to what is that bright line, Your Honor, I couldn't even begin to tell you, but I think we have enough here given what Tosco said and how this Court came down in Friend to apply the substantial predominance there and find that Best Buy is a California citizen. I mean, when we look at the purpose of diversity jurisdiction, we can see that it is not being disserved by calling Best Buy a California citizen using the principle place of business analysis. And this does not at all coopt or be somehow contrary to the purposes of CAFA. The parade of horribles will not exist. A truly national class action can still be removed to Federal court. I'm the master of my complaint. I chose to limit my case to California citizens suing under a California statute for wrongs occurring in California. Let somebody else sue them who lives in Mississippi or Arkansas or Texas or Florida. I'm only interested in protecting California citizens. And under those circumstances, it is not unfair when you have California citizens for a California wrong that took place under a California statute to haul Best Buy into a California state court. Your Honors, it has been a privilege to address this Court today. Thank you very much. Thank you, counsel. Davis v. HSBC is submitted. We are adjourned for the day.
judges: Kleinfeld, Bea, Ikuta